**Delcer KING and Wife, Renda King, Appellants,**

v.

**David C. HOLLAND and David C. Holland & Company, P.C., d/b/a Holland & Stephenson, Appellees.**

**No. 13–93–309–CV.**

Court of Appeals of Texas, Corpus Christi.

Oct. 6, 1994.

Rehearing Overruled Oct. 6, 1994.

Anthony F. Constant, Corpus Christi, David A. Smith, Hartman, Lapham & Smith, Victoria, for appellants.

David W. Corban, Fulbright & Jaworski, Houston, W. Wendell Hall, Renee A. Forinash, Fulbright & Jaworski, San Antonio, for appellees.

Before KENNEDY, GILBERTO HINOJOSA and YAÑEZ, JJ.

## OPINION

KENNEDY, Justice.

We withdraw our opinion of August 18, 1994 and enter this opinion in its place. Delcer and Renda King sued David C. Holland and David C. Holland & Company, P.C., d/b/a Holland & Stephenson for legal malpractice. The court granted Holland's motion for summary judgment based on statute of limitations against most of the Kings' claims detailed below. The court then dismissed the case for want of prosecution. We affirm in part and reverse and remand in part.

The Kings wanted to sell their farm to Wilhelm Degen, but minimize the tax consequences to themselves. The Kings wholly owned El Campo Well Services, Inc. which, in turn, owned the farm, El Campo Equipment Company, Inc., and cash. The Kings hired Holland to construct the transaction to divest ECWS of the equipment company and the cash, then convey the land through a stock transfer to Degen. Holland complied, and the sale closed on April 15, 1981.

The Kings claim they demanded and Holland agreed to provide four things: a secured interest in the property, a provision to prohibit the buyer from encumbering the real estate, a provision that the buyer timely pay existing notes and taxes and furnish the Kings with notice of the payments, and a secured interest in the stock. Before the closing, the Kings examined the documents that were to provide these guarantees. Included among these documents was the security escrow agreement (SEA). The Kings complain that, despite Holland's assurances, the agreements failed to provide these protections; two exhibits (A and B) to the SEA were missing, apparently contributing to the failure. The Kings also complained of Holland's failure to file a deed of trust to give notice of the Kings' security interest in the land.

The transaction did not go as the Kings planned. Degen was thirty to forty-five days late with his first payment to the Kings, due on April 15, 1982. He was also late with payments to one of the original lienholders as well as to taxing authorities. In 1984, they renegotiated with Degen and got a new promissory note. That year, they attempted to use the SEA to foreclose against Degen and discovered the nonexistence of their security interest and the existence of liens established by others after the transaction that were superior to their own nonexistent one. The Kings contend that Holland's malfeasance thereby damaged them.

They filed suit on April 15, 1985. The case was on the court's docket for eight years. During that period, the court sanctioned the Kings for discovery abuse and other dilatory tactics. The Kings' counsel sought to withdraw because they refused in 1986 and 1987 to meet with him. The court placed the case on its dismissal docket for want of prosecution in 1987, 1989, 1990, 1991, and 1992. The case was dismissed for want of prosecution in early 1992, but was reinstated.

On September 17, 1992, the court granted Holland's motion for summary judgment against the Kings' claims for legal malpractice, negligence, breach of warranty, breach of fiduciary duty and violations of the Texas Deceptive Trade Practices–Consumer Protection Act. The court announced that the fraud claim would survive and be severed from the others. The severance was never reduced to a written order, however, and was not effective. The court signed an order memorializing the summary judgment the next day.

The parties apparently never received notice of this order. The Kings moved the court to reconsider the summary judgment to allow them to refile their response, this time with proper service to the opposing party, so that the response could be considered on appeal. The Kings also noted that reconsideration would allow Holland to correct defects in the proof attached to his motion for summary judgment. Soon after, Holland filed an amended motion for summary judgment to correct those defects.

In January 1993, the court again placed this case on the dismissal docket. At the hearing on the motion to dismiss, the court granted the motion to reconsider the summary judgment, granted leave to file the amended motion for summary judgment, and granted that amended motion. The court then stated that the case was dismissed for want of prosecution. In April 1993, the court held a hearing on the motion to reinstate the case, and denied the motion.

Before reaching the merits of the point of error attacking the summary judgment, we distinguish a similar case in which we declined to address the merits of such points. *See Aguilar v. Maverick Eng'g Co.*, 752 S.W.2d 727 (Tex.App.—Corpus Christi 1988, no writ). In *Aguilar*, we held that we could not reach such points when the court had dismissed the entire cause for want of prosecution. *Id.* at 727–728. There, the plaintiff appealed the trial court's grant of summary judgment against his claims. *Id.* at 727. We dismissed his appeal for want of jurisdiction because a defendant's counterclaim remained pending, rendering the summary judgment interlocutory. *Id.* at 728. On remand, the trial court dismissed the entire cause for want of prosecution. *Id.* On appeal, the plaintiff attacked only the summary judgment. We wrote:

> We are aware that appellant was not in a position to prosecute his case since an interlocutory summary judgment had been granted against him. However, *absent a point of error complaining of the order of dismissal, or argument concerning the dismissal order*, error, if any, in the interlocutory summary judgment would not be reversible.

*Id.* (emphasis added). We overruled the points of error because we could not reach them. By contrast, the trial court in the final judgment here memorialized the granting of the amended motion for summary judgment, then proceeded to dismiss the case. Unlike Aguilar, the Kings raise points of error against both the dismissal and the summary judgment. These facts critically distinguish the case from *Aguilar* and free us from its holding.

■ We must also address Holland's claims that the wording of the final judgment reveals that the court granted summary judgment against and, alternatively, dismissed for want of prosecution the non-fraud claims. In its final judgment, the court first granted the motion for partial summary judgment and specified the causes of action extinguished thereby. In the next paragraph, the court wrote that "this case is dismissed for want of prosecution;" to so order, the court excised the phrase "all remaining claims of the Plaintiff" and inserted "this case."

We disagree that this substitution establishes dismissal as an alternate basis for the extinction of the non-fraud causes eliminated by the summary judgment. The sequence of the order shows that the court granted the summary judgment before dismissing the case. The causes eliminated by the summary judgment were no longer part of the case dismissed.

■ If the court adopted Holland's interpretation and intended also to dismiss the non-fraud claims for want of prosecution, the court erred. We reverse dismissals for want of prosecution for clear abuse of discretion. *State v. Rotello*, 671 S.W.2d 507, 508–09 (Tex. 1984). The Kings raise this issue under point of error three, by which the Kings challenge the dismissal, and point of error four, by which the Kings challenge the failure to reinstate the dismissed claims. After the original summary judgment, the non-fraud claims were alive only to the extent that the motion to reconsider and the amended motion for summary judgment resuscitated them. The Kings need not have appealed those causes during the pendency of their

motion to reconsider, especially because they sought reconsideration to improve the record on appeal; any failure to obtain a severance from the still viable claims would not have altered this aspect of the case. The Kings did not fail to prosecute these claims following the original grant of the motion for summary judgment. If the court included the non-fraud claims in its dismissal, such inclusion was therefore an abuse of discretion. To the extent that the court dismissed the non-fraud claims after granting summary judgment against them, we sustain point of error three. As there was no failure to prosecute, any failure to reinstate was error; we therefore sustain point four.

■ By their first point of error, the Kings challenge the court's grant of Holland's motion for partial summary judgment. When reviewing the grant of a motion for summary judgment, we must determine whether the summary judgment proof establishes as a matter of law the absence of a genuine issue of a material fact as to one or more of the essential elements of a cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). On disputed fact issues, we take all evidence favoring the nonmovant as true; we indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ The court granted Holland's motion in which he urged that a two-year statute of limitations barred the Kings' claims of legal malpractice and DTPA violations. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986) (held applicable to legal malpractice in *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988); TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1986) (DTPA). The limitations periods begin running when the injury occurs or when the injured parties discover or, in exercising due diligence, should discover facts establishing the elements of the cause of action. *Medical Protective Co. v. Groce, Locke & Hebdon,* 814 S.W.2d 124; 127 (Tex.App.—Corpus Christi 1991, writ denied) (legal malpractice); TEX.BUS. & COM.CODE ANN. § 17.565 (Vernon 1986) (DTPA). The court may decide as a matter of law that the injured party failed to exercise reasonable diligence if the defendant provides uncontroverted evidence of such failure. *Wakefield v. Bevly,* 704 S.W.2d 339, 346 (Tex.App.—Corpus Christi 1985, no writ).

■ To prevail on summary judgment motion based on an affirmative defense like statute of limitations, the defendant must conclusively establish every factual element of that defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). Because the court did not specify on which basis it granted the motion, we must affirm if any defensive theory survives the motion. *Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 79 (Tex. 1989).

■ Holland does not argue for a specific date of discovery. Instead, he contends that the Kings knew or should have known of his alleged malfeasance by April 14, 1983, two years before the suit was filed. He contends that several events should have triggered the Kings' investigation and discovery of the alleged malfeasance:

1. Their distrust of Holland that had developed by the time of the signing, their suspicion that he was not fulfilling his duties to them, and their decision to stop payment on their check to him;

2. his violation of a duty regarding the release of stock under the agreement.

3. the absence of Exhibits A and B to the Security Escrow Agreement upon the signing of the agreement;

4. Degen's lateness of thirty to forty-five days in making his first payment on the note;

5. Degen's default on his payment to an original lienholder, Degen's failure to notify them of payment of the obligation, and the original lienholder's notice to the Kings that it would foreclose; and

6. Degen's failure to notify the Kings in 1982 and 1983 that he had paid property taxes, lienholders, lease payments, or taxes on the lease, and their knowledge of the tax defaults.

Holland contends that the Kings did nothing to investigate their rights, which investigation would have led to their discovery of the

absence of the protections they alleged he purported to provide.

■ Holland's evidence is controverted and fails to prove his thesis as required. Holland provides excerpts from depositions. The Kings provide Mr. King's affidavit.[1] Though Mr. King stated in his deposition that the Kings distrusted Holland on the day of the signing, he went on to say that they had dinner, cooled off, and decided to trust in Holland's assurances and sign the documents. Mr. King said he stopped payment on the check to ensure that Holland would release an escrow account as promised; Holland was upset by this action, but released the account in return for the Kings' certified check. These incidents do not prove as a matter of law that the Kings should have investigated facts which would have led to their discovery of the missing exhibits and the nonexistence of the security interest.

Neither does Holland's early release of stock substantiate the summary judgment. Holland released stock related to the sale from a holding company in 1982 three to four months earlier than Mr. King thought he should. Holland did not personally notify the Kings of this release. Mr. King said in his deposition that he thought this move was discourteous and violated the agreement. The Kings did not sue on this issue; Mr. King said in his affidavit that they did not sue because they were not harmed by the early release. Regardless, this incident does not establish that the Kings knew or should have known of Holland's failure to include documents establishing a security interest in the real estate.

The Kings admit that they knew of Degen's defaults on payments to them, on taxes, and on payments to the original lienholder, but this knowledge does not prove that, as a matter of law, they should have discovered the deficiencies in the documents. The defaults do not by themselves show that the Kings lacked a security interest. Mr. King stated in his affidavit that Degen eventually made his 1982 and 1983 payments. Mr. King averred that he talked with Degen or his office throughout 1982, 1983, and 1984, keeping abreast of why Degen was not making the required payments. Mr. King stated that Degen assured him that he would make the payments. Mr. King stated that they were trying to work with Degen to help him carry out the agreement until early 1984, when they decided they must foreclose on the land. Only then did they learn of the deficiencies in Holland's performance, Mr. King said.

The centerpiece of Holland's evidence, properly viewed, fails to establish that the Kings knew that the agreements failed to provide the protections they requested or that the exhibits which might provide the protections were missing. The exchange quoted by Holland was as follows:

Q. Today you have indicated that Exhibits A and B were left off of the security escrow agreement that was prepared that night. And I gather there was no Exhibit A and B to the security escrow agreement when you signed it that evening, was there sir?

A. As far as I know there wasn't.

This excerpt does not show that Mr. King knew upon signing the documents that the exhibits were missing, nor does it show when he learned or should have learned that fact. The evidence showed that the Kings were confronted with more than fifty documents on the day of the signing. The Kings testi-

---

1. Holland challenges the affidavit, noting that Mr. King fails to unqualifiedly and positively represent the facts as disclosed in his affidavit to be true and within his knowledge as required. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). Instead, the affidavit is only stated to be "on his oath" and sworn before a notary public. The fact that the affidavit is taken "on his oath" makes the statements therein assignable as perjury, which is the goal. *See id.* His statements of what he knew and when he knew it are inherently within his knowledge. The affidavit is therefore not fatally defective. *See General*

*Prod. Co. v. Black Coral Inv.,* 715 S.W.2d 121, 122–23 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Holland also attacks many parts of the affidavit as self-serving and conclusory. He challenges the assertions of when the Kings first discovered that Holland had harmed them. We need not consider this line of attack because the statements we cite in the text are statements of fact as to when the Kings discovered the missing aspects of the agreement rather than their discovery of "harm."

fied at deposition that they went through the documents with Holland and, because of their lack of expertise, relied on his assurances that everything was in order, including the security interest that the missing exhibits would have supplied. In his affidavit, Mr. King asserted that he did not know that exhibits A and B were not attached, nor that the security interest they were to guarantee was absent, until 1984. The quoted exchange shows only that, at the time of the deposition, Mr. King did not believe that the exhibits had been attached.

Genuine issues of fact persist as to when the Kings knew or should have known about the defects in Holland's performance. Whether the Kings were reasonable in attempting to negotiate with the buyer to gain performance instead of investigating and discovering Holland's alleged malfeasance is a disputed, material issue. We sustain point of error one.

 By points of error two and three, the Kings attack the court's dismissal of the case for want of prosecution. We review the court's decision for a clear abuse of discretion. *Rotello,* 671 S.W.2d at 508–09. The trial court has the inherent power to dismiss cases not prosecuted with due diligence. *Id.* This inherent power is in addition to the power to dismiss found in the rules of procedure. *See* Tex.R.Civ.P. 165a(4); *City of Houston v. Thomas,* 838 S.W.2d 296, 297 (Tex.App.—Houston [1st Dist.] 1992, no writ); *see also Torres v. Rios,* 869 S.W.2d 555, 556–57 (Tex.App.—Corpus Christi 1993, no writ). This case must have been dismissed under the court's inherent power because it does not fit the profile of either subdivision of the procedural rules. We must, therefore, consider the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for the delay. *Rotello,* 671 S.W.2d at 509.

The case's eight-year tenure on the docket and the Kings' previous dilatoriness set out above and apparent from the record support heightened scrutiny of the Kings' actions after the reinstatement. The record reflects more activity than Holland asserts occurred. Contrary to Holland's assertion here and in

the trial court that the Kings took only one deposition 1992, the record indicates that the Kings participated in at least four depositions during May and June 1992. A mediation attempt in August failed. Holland concedes that the Kings nonsuited some defendants during the summer. All activity appears to have screeched to a halt following the motion to reconsider the September 17, 1992 grant of the motion for partial summary judgment.

The court's notes from that unrecorded hearing show that its grant of the partial motion left the fraud action alive. The notes show that the court granted a severance of the causes covered by the summary judgment. The notes also mention a pretrial scheduling order. The notes are silent as to any abatement of the fraud action.

The Kings' attorney said in his bill of exceptions that he recalled that the court accepted his argument that an abatement of the fraud action would be more efficient. He said he requested an abatement so that, in the event the summary judgment was reversed, those actions could be tried at one proceeding with the fraud claims. He also refers for support to the following passage from the Defendants' Opposition to Plaintiffs' Motion to Retain Case on Docket, "[P]laintiffs' counsel asked the Court to refrain from entering any docket control orders or trial settings until plaintiffs could lodge their interlocutory appeal. The Court merely acceded to plaintiffs' request."

Holland's attorney filed an affidavit along with his objections to the bill. In it, he recalled the severance of the claims, but remembers requesting an exchange of draft orders between himself and the Kings' attorney. Holland's attorney sent a proposed order granting the summary judgment and requested a draft of the severance order. He said he never received the draft. He also avers that the Kings did not request, nor did the court order, an abatement of the fraud claim. He contends that the court agreed to postpone the entry of the scheduling order because the Kings agreed to a speedy appeal of the summary judgment.

The court entered no order regarding severance or abatement. Five months later, the

court dismissed the case for want of jurisdiction.

We find no abuse of discretion in the dismissal. The case languished for many years while the Kings consistently neglected it. They had not requested a trial under Wharton County local rules. Though their prosecution had seemed jump-started after the reinstatement of the case, it again ground to a halt. The Kings may have understood the court to have severed and abated the fraud action, but they took no steps to formalize those orders or to see that they were in the court's file; Holland provides some proof that the abatement never existed. While in other cases such confusion might be excused, we cannot say that the court abused its discretion in declining to excuse it in a case with a history of such neglect. We overrule points two and three as they relate to the claims not eliminated by the summary judgment.

Similarly, we affirm the court's decision not to reinstate the case. By point four, the Kings contend that the nonreinstatement was error. The procedural rule standard applies even to cases that courts dismiss under their inherent powers. *See* TEX.R.CIV.P. 165a(4). The rules require a court to reinstate a case dismissed for want of prosecution

upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained.

TEX.R.CIV.P. 165a(3). As we stated above, the Kings' long neglect of this case justifies the court's dismissal for their failure either to formalize the severance and abatement or to see that such orders were in the court's file. Even accepting the Kings' characterization of the September hearing as accurate, we cannot say that the court abused its discretion in implicitly finding that their inactivity in this case following that hearing rose to the level of conscious indifference given the history of neglect and recent dismissal and reinstatement. We overrule point four.

We affirm the dismissal of the fraud claim. We reverse the summary judgment rendered against all of the Kings' other claims. We remand those causes of action for new trial.