**MEDICAL PROTECTIVE COMPANY, Appellant,**

v.

**GROCE, LOCKE & HEBDON and George F. Evans, Jr., Appellees.**

No. 13–90–185–CV.

Court of Appeals of Texas, Corpus Christi.

June 27, 1991.

Rehearing Overruled Aug. 29, 1991.

Michael G. Terry, Corpus Christi, for appellant.

Lewis Plunkett, Cathy J. Sheehan, San Antonio, Richard W. Crews, Corpus Christi, for appellees.

Before DORSEY, KENNEDY and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

This is an appeal from a summary judgment granted in favor of the defendant law firm. The plaintiff alleged a cause of action for legal malpractice and indemnity. The trial court ruled that limitations barred the legal malpractice action and that the plaintiff has no cause of action for indemnity. We hold there is a fact issue regarding when the plaintiff discovered or should have discovered the elements of the cause of action and accordingly reverse and remand for trial.

Medical Protective Company, an insurance company writing medical malpractice insurance, sued its former attorneys, Groce, Locke & Hebdon. Medical Protective alleged that the law firm committed acts of malpractice during an action by Medical Protective against a former insured, Dr. Sanford Glanz. This caused Dr. Glanz to file suit against Medical Protective.

The present dispute arose from two prior lawsuits. Initially, a medical malpractice suit was filed by Ligio Tavares against Dr. Sanford Glanz. Medical Protective, Dr. Glanz's malpractice insurer, defended Dr. Glanz. Tavares obtained a judgment for $575,000.00, which was appealed.

## MEDICAL PROTECTIVE V. GLANZ

Medical Protective hired the law firm of Groce, Locke & Hebdon to determine if Dr. Glanz breached the clause in his insurance contract requiring that he cooperate fully with his carrier, with the view that Glanz's breach would relieve the company of its obligations under the policy. After an investigation, the law firm then filed a declaratory judgment action for the company, arguing that Glanz had breached the insured's duty of full disclosure under the

policy and seeking actual and punitive damages against Dr. Glanz.

Dr. Glanz filed a counterclaim for declaratory relief and for damages alleging various causes of action, including bad faith. These claims for damages were severed from the declaratory judgment action and on January 8, 1988, were settled by Medical Protective for $1,500,000.00.

The actions of the law firm during the course of the litigation with Dr. Glanz for a declaratory judgment give rise to Medical Protective's present claim against the law firm for legal malpractice. Dr. Glanz filed two motions requesting sanctions for discovery abuse in July 1985, and sanction orders were entered against the Medical Protective. On August 9, 1985, in response to another motion for sanctions by Dr. Glanz, the pleadings of the company were struck and a default judgment entered against it. The judgment found the carrier obligated under the insurance policy to pay the Tavares judgment rendered against Dr. Glanz and awarded him attorneys fees and costs in excess of twenty eight thousand dollars. Medical Protective paid the Tavares judgment and dismissed that appeal.

The judgment Dr. Glanz took against Medical Protective, still represented by Groce, Locke & Hebdon, was appealed and later affirmed on October 16, 1986. *Medical Protective Co. v. Glanz*, 721 S.W.2d 382 (Tex.App.—Corpus Christi 1986, writ ref'd). That opinion details the discovery violations for which sanctions were imposed. *Id.* at 384–85. The Supreme Court of Texas refused writ of error on May 13, 1987.

## THIS SUIT

On January 7, 1988, Medical Protective filed this suit against its former lawyers for legal malpractice asserting two claims. The first claim was that the declaratory judgment adverse to Medical Protective action was the proximate result of its lawyers' negligence. The other claim was for indemnity. In it, Medical Protective maintained that if it was found liable to Dr. Glanz in his severed counterclaim, such liability is a result of its attorneys' negligence

while acting as agents of the company. As the company's liability was vicarious to it from the acts of its agents, the agent, the defendant law firm, should be held to indemnify the principal for the results of the agent's negligent acts.

The alleged negligent acts were certain discovery abuses by the law firm resulting in the default judgment. The action for indemnity sought recovery for any amount the company paid Dr. Glanz.

Groce, Locke, & Hebdon filed a motion for summary judgment. The law firm argued that both actions were barred by limitations, and that Medical Protective had no cause of action for indemnity. The trial court granted the summary judgment and the insurance company appeals.

## LIMITATIONS

By its first point of error, Medical Protective argues that the trial court erred in granting appellee's summary judgment on the grounds that limitations barred its action for negligence. We agree.

■ The instant cause of action complains of legal malpractice, which is an action for negligence. *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex.1989). The limitations period for attorney negligence is two years from the time the cause of action accrues. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988). In *Willis*, the Supreme Court of Texas adopted the discovery rule in actions alleging legal malpractice. The court held that a cause of action accrues when facts establishing the elements of the cause of action are discovered, or in the exercise of due diligence should have been discovered. *Id.* at 646. This statement of the rule is consistent with other decisions from the court establishing the discovery rule for other causes of action. *See e.g., Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex.1976).

The standards for reviewing a summary judgment are well established:

In reviewing a summary judgment record, this Court must determine whether a disputed fact issue exists that would preclude a summary judgment. *Ba-*

*youth v. Lion Oil Co.*, 671 S.W.2d 867 (Tex.1984). Every reasonable inference must be indulged in favor of the nonmovants and any doubt resolved in their favor. *Id.* The question on appeal is not whether the summary judgment proof raises a fact issue with reference to essential elements of plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex.1990).

■ At trial, the defendant must plead and prove the defense of limitations. However, this burden does not apply in a summary judgment context. Here, the burden is on the movant to negate the discovery rule by proving as a matter of law that no issue of material fact exists concerning when the plaintiff discovered or should have discovered the cause of action. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Weaver v. Witt*, 561 S.W.2d 792, 794 (Tex.1977); *Pooley v. Seal*, 802 S.W.2d 390, 392 (Tex.App.—Corpus Christi 1990, writ denied); *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).

■ Medical Protective argues that the law firm failed to establish as a matter of law when the cause of action accrued. The law firm, as the movant, had the burden to establish this material fact as a matter of law through competent summary judgment proof establishing that Medical Protective discovered, or in the exercise of reasonable diligence should have discovered, the facts supporting the cause of action more than two years before suit was filed. *Burns*, 786 S.W.2d at 267; *Weaver*, 561 S.W.2d at 794.

■ The law firm's summary judgment evidence presented proof that Medical Protective was aware of the specific acts of malpractice on or about the time they occurred. The summary judgment evidence included a copy of the default judgment. In this judgment, the trial court specifically states that George F. Evans, Jr., and

Thomas H. Sharp, Jr., two attorneys from the law firm, abused the discovery process, and for that reason, the default judgment was entered against Medical Protective. In addition, Sharp admitted in an affidavit that he committed certain of the acts upon which the sanction order was based. The affidavit was tendered to the court in a motion to Vacate the Sanction Order. In particular, he stated that the alleged discovery violations were based on his good faith belief that part of the material Glanz sought was privileged. Although the trial court had ruled that the material was discoverable, Sharp and other attorneys at the law firm thought the court's discovery ruling was in error. They planned to mandamus the judge and did not wish for the issue to be waived by production. On that basis, Evans told a witness not to bring certain materials the court had ruled discoverable to the deposition. There is evidence that other discovery violations apparently occurred, including missed deadlines, miscitation of legal authority, and *ex parte* communications with the court. *See generally Medical Protective Co.*, 721 S.W.2d at 384–85.

There was some evidence that David Brackmeyre, a designated representative of Medical Protective, was aware that the law firm's negligence was a cause of Medical Protective's injury more than two years prior to the date suit was filed. He stated in a memo on September 30, 1985, that:

> [I]t has arisen that the work product supplied us by Groce, Locke & Hebdon may have been materially insufficient to suit the purposes for which it was intended. As a result, the judge hearing the matter entered a default judgment, ruling that we take nothing by way of the lawsuit, establish coverage for Dr. Glanz as a matter of law, and entered a judgment against the Company and two lawyers from Groce, Locke & Hebdon for $25,500 in attorney's fees, $3,054 in expenses, and post judgment interest of 10% per annum [sic].

. . . . .

As previously mentioned, we have developed some optimism because of the affidavit filed by Tom Sharp, and their apparent willingness to admit that their conduct caused a great deal, if not all, of the problems.

In contrast, Medical Protective's summary judgment evidence indicated that after the default judgment was entered Sharp and Evans took the position that judicial error, and not their negligence was the cause of the injury. The summary judgment evidence included Brackmeyre's properly authenticated deposition. *See Deerfield Land Joint Venture v. Southern Union Realty Co.*, 758 S.W.2d 608, 610 (Tex.App.—Dallas 1988, writ denied). In his deposition he stated that George F. Evans and Thomas Sharp, explained that the default judgment was based on an erroneous ruling by the trial court and was caused, in part, by favoritism. They recommended an appeal and expressed hope that it would be successful but did not guarantee reversal.

In addition, a Motion to Vacate or Modify Default Judgment and to Vacate or Modify Order Striking Pleadings supported by Sharp's affidavit was filed. In this motion, the law firm argued for a reversal of the sanctions and took the position that the trial court's ruling was in error. When this motion was overruled, the default judgment was appealed. In his deposition Brackmeyre stated that they did not begin to realize that perhaps the judge was correct in his ruling until the judgment had been affirmed by this court and writ refused by the Supreme Court of Texas. These last two events occurred within two years from the date suit was filed.

■ The issue here is as old as the discovery rule: what must be discovered for the cause of action to accrue. The Supreme Court has been clear on this subject, stating that a cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered facts supporting each element of the cause of action. *Willis*, 760 S.W.2d at 646.

It is undisputed that Medical Protective discovered its injury when the judgment was signed. The question is when did Medical Protective discover, or when, in the

exercise of reasonable diligence, should Medical Protective have discovered that its injury was caused by the law firm's breach of duty. *See Id.; Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977); *Allen v. Roddis Lumber & Veneer Co.,* 796 S.W.2d 758, 760–61 (Tex.App.—Corpus Christi 1990, writ denied) (injury and cause must be discovered); *Corder v. A.H. Robins Co.,* 692 S.W.2d 194, 196–97 (Tex.App.—Eastland 1985, no writ); *Grady v. Faykus,* 530 S.W.2d 151, 153 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). *But see Coody v. A.H. Robins, Co.,* 696 S.W.2d 154, 156 (Tex.App.—San Antonio 1985, no writ) (cause of action under the discovery rule accrues when injury is discovered). Medical Protective argues that the cause of action accrued at the time the judgment was entered, which is more than two years before suit was filed. The law firm argues that the cause of action accrued less than two years from the date suit was filed. Specifically, it argues that the cause of action accrued when this court affirmed the judgment, or at a later date.

The first time that Medical Protective could have discovered its injury and its cause was the date the judgment was signed. On or about that date, Medical Protective had two conflicting sources of information concerning the cause of the injury. Abuse of discovery process was stated in the judgment as the cause of the injury. The law firm stated that the ruling was judicial error.

Summary judgment evidence supported each of these theories of causation. For example, the default judgment itself stated that it was entered to sanction Medical Protective's attorneys. The memo of September 30, 1985, indicates that on that date, Medical Protective was aware that the law firm's work product was "materially insufficient." On the other hand, Brackmeyre's deposition indicates that he and others at Medical Protective believed in the law firm's position that judicial error was the cause of the injury until at least the time this court affirmed the judgment. This view is also supported by the Motion to Vacate, and the deposition of Sharp which took the position that judicial error,

and not the law firm's negligence, was the cause of the injury.

At a summary judgment hearing, every reasonable inference must be indulged in favor of the non-movant, and any doubt resolved in its favor. *Bayouth,* 671 S.W.2d at 868. Summary judgment may not be granted if the non-movant's controverting summary judgment evidence raises a question concerning a material fact. *See Trapnell v. John Hogan Interests,* 809 S.W.2d 606, 611 (Tex.App.—Corpus Christi 1991).

The evidence was conflicting on the question whether Medical Protective actually discovered, or should have discovered, that the law firm, rather than an erroneous ruling by the trial court, caused their injuries more than two years before suit was filed. Thus, a question of fact exists concerning whether Medical Protective discovered, or should have discovered, the cause of action for legal malpractice. Reasonable minds could differ regarding the weight to give its attorney's opinion, and the court's opinion. We are aware of the compelling public policy implications of a different result here. To hold that the client could not rely on its lawyer's statements that judicial error caused the injury would diminish the attorney-client relationship, and give a client good reason to lack confidence in an attorney's word. Moreover, it would require the diligent client to hire a second lawyer to second guess the actions of the first at every difficulty. For these reasons the Supreme Court of Texas adopted the discovery rule, and we find their concerns exemplified in the instant case. *See Willis,* 760 S.W.2d at 645–46. We hold that the law firm failed to establish as a matter of law that Medical Protective actually discovered, or in the exercise of reasonable diligence, should have discovered that the law firm's negligence, if any, was the cause of their injury more than two years before suit was filed. Medical Protective's first point of error is sustained.

## INDEMNITY

Appellant argues in its second and fourth points of error that the trial court erred in

ruling that it has no cause of action for indemnity from the law firm for the amounts it paid Dr. Glanz in settlement of his severed counterclaim against it. There is neither an express contract for indemnity nor a claimed statutory right of indemnity. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 32.-001–.003 and §§ 33.001–.016 (Vernon 1989). Thus, its action, if any, must be derived from the common law.

The common law right of indemnity is greatly limited in Texas. The Supreme Court has stated: "The only remaining vestiges of common law indemnity involve purely vicarious liability or the innocent product retailer situation." *Aviation Office of America, Inc. v. Alexander & Alexander of Texas, Inc.*, 751 S.W.2d 179, 180 (Tex.1988). Medical Protective asserts a common law right of indemnity under vicarious liability: that of an innocent party who has been held liable through the misconduct of another, such as a master for the conduct of his servant, or a principal for his agent.

 For such a right of indemnity to exist, the injured party must have a cause of action against the indemnitor, that is, the one whose action caused the indemnitee to be vicariously liable. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 446 (Tex.1989); *City of Houston v. Watson*, 376 S.W.2d 23, 33 (Tex.Civ.App.— Houston 1964, writ ref'd n.r.e.). In this case, for a right of indemnity to exist, Dr. Glanz must have a cause of action against the law firm for the actions that were attributed to the client, Medical Protective.

Dr. Glanz is barred from suing the law firm because there is no privity of contract between him and the law firm, and no special relationship between them has been shown. *Graham v. Turcotte*, 628 S.W.2d 182, 184 (Tex.App.—Corpus Christi 1982, no writ); *see also, Dickey v. Jansen*, 731 S.W.2d 581, 583 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e). Because Dr. Glanz has no right of action against Groce, Locke and Hebdon, Medical Protective has no corresponding right of indemnity against the law firm. We overrule appellant's second and fourth points of error.

It is not necessary for us to address appellant's third point of error. The trial court's judgment is AFFIRMED in part and REVERSED in part and REMANDED.