11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Richard E. Finlan et al

Appellants

Vs.                   No.
11-00-00302-CV - Appeal from Dallas County

Dallas Independent School
District et al 

Appellees

 

The trial
court granted summary judgments and rendered a final judgment that Richard E.
Finlan (Finlan), David L. Venable, and Don Venable take nothing on their claims
against the Dallas Independent School District (DISD), the DISD superintendent
and trustees (DISD Defendants),[1]
and the DISD attorneys (Lawyer Defendants).[2]  The trial court also granted summary
judgment and rendered judgment that DISD trustee Ed Grant (Grant) take nothing
on his cross-claim for indemnity against the Lawyer Defendants.  In this appeal, Finlan, David Venable, and
Grant assert that the trial court erred in rendering summary judgment against
them.  Don Venable appealed but later
withdrew his appeal.  Because the DISD,
the DISD Defendants, and the Lawyer Defendants established that they were
entitled to summary judgment on Finlan=s and David Venable=s claims and because the Lawyer Defendants established that they were
entitled to summary judgment on Grant=s cross-claim for indemnity, we affirm the trial court=s judgment.

                                                                     Introduction








In 1992,
the DISD, a governmental entity, filed a civil lawsuit for tortious
interference and defamation against Finlan, David Venable, and Don
Venable.  Finlan and the Venable
brothers counterclaimed, alleging that the DISD=s suit was baseless and malicious and that the DISD filed the suit in
retaliation for Finlan and Don Venable=s exercise of First Amendment free speech rights to publicly criticize
the DISD and oppose an upcoming DISD bond election.  The core issue in this case is whether the DISD=s filing of the 1992 civil suit deprived
Finlan and David Venable of their constitutional rights and, therefore,
subjected the DISD to liability under 42 U.S.C.A. ' 1983 (West Pamph. Supp. 2002) for civil
rights violations.  This case is not the
only case between Finlan and the DISD; Finlan and the DISD have a long history
of litigation.  Finlan and other parties
involved in this case have raised virtually identical Section 1983 civil rights
claims B that the DISD=s filing of a civil suit or counterclaim against them violated their
First Amendment rights B in at least three other cases: (1) Dallas Independent School District
v. Finlan, 27 S.W.3d 220 (Tex.App. - Dallas 2000, pet=n den=d), cert. den=d, ___ U.S. ___, 122
S.Ct. 342, 151 L.Ed.2d 258 (2001); (2) Hinds v. Dallas Independent School
District, 188 F. Supp. 2d 664 (N.D. Tex. 2002); and (3) Venable v. Keever, 61
F. Supp. 2d 552 (N.D. Tex. 1999), and subsequent opinion at 2000 WL 1281206
(N.D. Tex. 2000).  In each of these
three cases, the courts held that the DISD=s filing of the suit or counterclaim was not a constitutional violation
and, therefore, did not give rise to Section 1983 liability.  We discuss these cases below.  Now, contrary to the holdings in each of
these three cases, Finlan and David Venable again assert in this appeal that
the filing of a civil suit against them violated their civil rights.                    

                                                                Background
Facts

 In 1991, Finlan and Don Venable sued the DISD
for alleged fraud and misapplication of bond funds.  In 1992, Goldman, Sachs & Co., an investment banker, agreed
to underwrite the issuance of $60,000,000 in tax and revenue anticipation notes
for the DISD.  Finlan and Don Venable
wrote a letter to Goldman, Sachs & Co. informing it of their pending
litigation against the DISD.  In the
letter, they stated as follows:








Please be on notice that an Application for
Temporary Injunction has been filed in the context of a law suit against the
District that alleges fraud, misapplication of bond funds and for falsification
of government documents....As a defense against any claims of fraud that may
arise and may present the possibility of irreparable harm to the taxpayers of
this District, you are being made aware of the aforementioned  AApplication for Temporary Injunction@ and of the pending litigation. Take due notice and proceed at your own
risk. 

 

In
response to this letter, the DISD Defendants conferred with DISD attorney,
Dennis J. Eichelbaum, and decided to file a lawsuit against Finlan, Don
Venable, and David Venable for tortious interference with the DISD=s relationship with Goldman, Sachs &
Co.  The DISD Defendants authorized the
Lawyer Defendants to file suit. 

On October
5, 1992, the DISD filed suit in the 192nd District Court of Dallas County
against Finlan, David Venable, and Don Venable for tortious interference with
its relationship with Goldman, Sachs & Co. and for defamation.  In its original petition, the DISD sought to
recover damages in excess of $10,000,000. 
The DISD alleged that, if the letter to Goldman, Sachs & Co. caused
an upcoming $270,000,000 bond election to fail, its damages would exceed $270,000,000.
Finlan and both Venables filed a counterclaim, asserting that the DISD=s filing of the suit constituted a violation
of their civil rights under Section 1983. 

DISD=s suit was transferred from the 192nd
District Court of Dallas County to the 14th District Court of Dallas
County.  In 1993, Finlan filed a plea in
bar to the DISD=s suit against him.  The trial court granted Finlan=s plea in bar and dismissed the DISD=s suit against Finlan with prejudice. 
DISD nonsuited its claims against the Venables.  The trial court realigned the parties.  Finlan and the Venables became the
plaintiffs, and the DISD became the defendant. 
The suit was transferred to the 101st District Court of Dallas County. 

In 1994,
Finlan, pro se, and the Venables, represented by Ronald Hinds, filed suit
against the DISD Defendants and the Lawyer Defendants in the 162nd District
Court of Dallas County.  They alleged
that the DISD=s filing of the 1992 tortious interference
suit violated their First Amendment constitutional rights and, consequently,
subjected the DISD Defendants and the Lawyer Defendants to liability for civil
rights violations under Section 1983. 
They also alleged state law claims of malicious prosecution/abuse of
process and intentional infliction of emotional distress. 








Because
DISD Trustee Grant took the position that the DISD=s filing of the 1992 tortious interference
suit violated Finlan=s and
the Venables= civil rights, the DISD elected not to
provide Grant with a defense in the 162nd District Court suit.  In his answer to the suit, Grant admitted
Finlan=s and the Venables= factual allegations and agreed that the DISD=s filing of the 1992 tortious interference
suit violated Finlan=s and
the Venables= civil rights.  Grant, represented by David Venable=s lawyer, Ronald Hinds, filed a cross-claim for indemnity against the
Lawyer Defendants.  Grant based his
cross-claim on alleged malpractice committed by the Lawyer Defendants. 

Grant
entered into an agreed judgment in favor of Finlan for $300,000, and the trial
court entered the judgment.  Based upon
the events surrounding the $300,000 agreed judgment, the DISD filed a
conspiracy suit in 1995 against Finlan, Grant, and Hinds, alleging that they
conspired to obtain the $300,000 judgment as a means to force the DISD to pay
$300,000 to Finlan.  See Dallas
Independent School District v. Finlan, supra. 
Finlan filed a counterclaim for civil rights violations under Section
1983, alleging that the DISD filed the 1995 conspiracy suit in retaliation for
his exercise of free speech rights. 
Finlan asserted that the DISD=s filing of the suit violated his First Amendment rights to free speech
and to petition the courts for redress of grievances.  The Dallas Court of Appeals disagreed with Finlan and held that
the DISD=s filing of the suit did not violate Finlan=s constitutional rights.  Dallas Independent School District v.
Finlan, supra at 244-45.  Hinds filed a
Section 1983 civil rights suit against the DISD, the DISD Trustees, and the
Lawyer Defendants in federal court alleging that the DISD=s filing of the 1995 conspiracy suit violated
his First Amendment rights to free speech and to access the courts.  See Hinds v. Dallas Independent School
District, supra.  Hinds claimed, similar
to David Venable=s claims in the case now before this court,
that the DISD=s filing of the suit against him damaged his
reputation and law practice.  The
federal district court held that Hinds failed to state a claim under Section
1983; the DISD=s filing of the suit against Hinds did not
violate Hinds= First Amendment rights.  Hinds v. Dallas Independent School District,
supra at 673-76.








       In March 1999, Finlan=s and the Venables= 162nd District Court suit against the DISD
Defendants and the Lawyer Defendants was consolidated with their suit against
the DISD in the 101st District Court. 
The 101st District Court cause is the cause currently before this
court.  Finlan=s Section 1983 civil rights claims in this
cause are virtually identical to the civil rights claims that he asserted
unsuccessfully in Dallas Independent School District v. Finlan, supra.  In this cause, Finlan claims that the DISD=s filing of the 1992 tortious interference
suit was malicious and retaliatory and violated his First Amendment rights of
free speech and to petition the courts. 
In his latest petition, Finlan alleged six Section 1983 claims based
upon the filing of the 1992 tortious interference suit: (1) violation of his
civil rights in retaliation for his exercise of First Amendment rights; (2)
conspiracy to violate his constitutional right to speak on the public issue of
the DISD bond election; (3) violation of his civil rights by interfering with
his constitutional right to speak on the public issue of the DISD bond
election; (4) violation of his civil rights by retaliating for his speech to
the press;  (5) violation of his right
to petition the government for redress of his grievances; and (6) violation of
his Fourteenth Amendment liberty and property rights. 

David
Venable=s claims in this suit are similar to Finlan=s claims and the claims that Hinds made in
Hinds v. Dallas Independent School District, supra.  In his latest petition, David Venable alleged that the DISD=s filing of the 1992 tortious interference
suit against him violated his civil rights under Section 1983.  He also alleged claims for malicious
prosecution, intentional infliction of emotional distress, and tortious
interference with contractual and business relations. 

The DISD,
the DISD Defendants, and the Lawyer Defendants (the Defendants) filed motions
for summary judgment on the merits of Finlan=s and David Venable=s claims; and the DISD Defendants and the Lawyer Defendants filed motions
for summary judgment on immunity grounds. 
The Lawyer Defendants also filed a motion for summary judgment on Grant=s cross-claim for indemnity against
them.  On July 26, 1999, the trial court
entered an order granting summary judgment to the DISD and the DISD Defendants
on the merits of Finlan=s and David Venable=s claims and to the DISD Defendants on their qualified immunity
defense.  On June 7, 2000, the trial
court entered an order granting summary judgment to the Lawyer Defendants on
the merits of Finlan=s and
David Venable=s claims and on Grant=s claim for indemnity.  By separate order on June 7, 2000, the trial
court severed Finlan=s and
David Venable=s claims against Grant and Dan Peavy from
this suit.  On June 19, 2000, the trial
court entered its final judgment in favor of the Defendants.

                                                               Standard
of Review








This appeal involves the review of traditional
motions for summary judgment and no-evidence motions for summary judgment. We
will apply the well-recognized standard of review for traditional summary
judgments. We must consider the summary judgment evidence in the light most
favorable to the non-movant, indulging all reasonable inferences in favor of
the non-movant, and determine whether the movant proved that there were no genuine
issues of material fact and that it was entitled to judgment as a matter of
law.  Nixon v. Mr. Property Management
Company, Inc., 690 S.W.2d 546 (Tex.1985); City of Houston v. Clear Creek Basin
Authority, 589 S.W.2d 671 (Tex.1979). 
In order for a defendant to be entitled to summary judgment, it must
either disprove an element of each cause of action or establish an affirmative
defense as a matter of law. American Tobacco Company, Inc. v. Grinnell, 951
S.W.2d 420, 425 (Tex.1997); Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
911 (Tex.1997).   

The trial
court must grant a no-evidence motion for summary judgment unless the
non-movant produces evidence that raises a genuine issue of material fact on
the challenged element of his claim or defense.  TEX.R.CIV.P. 166a(i). The appellate court reviews evidence
presented in response to a motion for a no-evidence summary judgment in the
same way it reviews evidence presented in support of, or in response to, a
motion for traditional summary judgment; 
it accepts as true evidence favorable to the non-movant and indulges
every reasonable inference and resolves all doubts in favor of the non-movant.
Hight v. Dublin Veterinary Clinic, 22 S.W.3d 614, 619 (Tex.App. - Eastland
2000, pet'n den'd).  A no-evidence summary
judgment is improper if the non-movant presents more than a scintilla of
probative evidence to raise a genuine issue of material fact on the challenged
element.  Hight v. Dublin Veterinary
Clinic, supra at 619.  More than a
scintilla of evidence exists when the evidence Arises to a level that would enable reasonable and fair-minded people to
differ in their conclusions.@  Merrell Dow Pharmaceuticals,
Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997), cert. den'd, 523 U.S.
1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

                       Finlan=s and David Venable=s Federal Civil Rights Claims








In his
first through fourth, seventh, and eighth issues, Finlan complains that the
trial court erred in granting summary judgment and final judgment to the
Defendants on the merits of his Section 1983 claims.  In Issues Nos. 2 and 7, Finlan makes the specific complaint that
the trial court erred in granting summary judgment on the ground that the
filing of a retaliatory lawsuit is not actionable under Section 1983.  In his third issue, David Venable complains
that the trial court erred in granting summary judgment to the Defendants on
the merits of his claims because the summary judgment evidence created a fact
issue.  

The first
issue is whether the DISD=s filing of the 1992 tortious interference suit violated Finlan=s and David Venable=s civil rights under Section 1983.  Section 1983 provides that:

Every
person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or
causes to be subjected, any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable to the party
injured in an action at law.      

 

In order
to recover under Section 1983, a plaintiff must establish that he has been
deprived of a right, privilege, or immunity Asecured by the Constitution and laws.@   See Baker v. McCollan, 443
U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).  If the Defendants conclusively established that they did not
deprive Finlan and David Venable of any right, privilege, or immunity Asecured by the Constitution and laws@ by filing the 1992 tortious interference
suit, the trial court properly granted summary judgment on the Section 1983
claims.  The essence of Finlan=s and David Venable=s claims is that the Defendants filed a
baseless and malicious suit against them in retaliation for Finlan and Don
Venable=s exercise of their First Amendment rights to
free speech and, more specifically, of their rights to publicly criticize the
DISD and oppose a bond election.  Finlan
asserts that the filing of the retaliatory suit violated his First Amendment
rights of free speech and to petition the courts for redress of
grievances.  

In Johnson
v. Louisiana Department of Agriculture, 18 F.3d 318, 320 (5th Cir. 1994), the
Fifth Circuit determined that the filing of a suit in retaliation for the
exercise of First Amendment free speech rights does not, in itself, constitute
a violation of Section 1983.  Johnson, a
cropduster, claimed that the defendants had instituted a number of
administrative actions against him for alleged violations of state pesticide
laws in retaliation for his exercise of First Amendment free speech
rights.  The district court dismissed
Johnson=s claim for failure to state a Section 1983
claim, and the Fifth Circuit affirmed the district court.  The Fifth Circuit analyzed the claim:








If this allegation
asserts a claim on any basis, we agree with the district court that the claim
is one for malicious prosecution in violation of Johnson=s First Amendment rights.  Whether the Constitution comprehends any
such claim is far from clear....Further, it is an even more complex question
whether and on what basis a First Amendment claim of malicious prosecution can
be made.  But at the very least, if the
First Amendment protects against malicious prosecution, Johnson must not only
allege a deprivation of a constitutional right, but must also establish all of
the elements of the common law tort action.

 

Johnson
v. Louisiana Department of Agriculture, supra at 320.

In Johnson,
the Fifth Circuit did not answer the question whether the filing of a suit in
retaliation for the exercise of First Amendment rights could rise to the level
of a constitutional violation that is actionable under Section 1983.  However, the Fifth Circuit made clear that,
if the Constitution recognizes such a claim, the plaintiff, at a minimum, would
have to establish the deprivation of a constitutional right and all of the
elements of a state law malicious prosecution claim.  Johnson v. Louisiana Department of Agriculture, supra at 320; see
also Hinds v. Dallas Independent School District, supra at 674.

In Dallas
Independent School District v. Finlan, supra, the Dallas Court of Appeals
relied upon Johnson and held that the DISD=s filing of the allegedly retaliatory 1995 conspiracy suit against
Finlan was not a constitutional violation. 
Dallas Independent School District v. Finlan, supra at 244.  In Hinds v. Dallas Independent School
District, supra, Hinds claimed that the DISD filed the 1995 conspiracy suit in
retaliation for his exercise of First Amendment free speech rights and that the
suit violated his First Amendment rights of free speech and to petition the
courts.  The federal district court
analyzed the claims:

In Venable v. Keever, 61
F.Supp.2d 552 (N.D.Tex. 1999), this court held that the filing of an allegedly
retaliatory counterclaim seeking declaratory judgment in state court on a
matter already pending before that state court was not a violation of the First
Amendment right of access to the courts....In a subsequent opinion, the court
incorporated and reaffirmed its earlier holding and further held that the
Plaintiffs failed to establish their civil conspiracy claim....Finlan, who was
a named plaintiff in the action, appealed to the United States Court of Appeals
for the Fifth Circuit.  In an
unpublished opinion, the Fifth Circuit dismissed the appeal as frivolous.  See Venable v. Keever, 263 F.3d 162 (5th
Cir. 2001).

 








The key issues or claims
that Hinds raises in this action are strikingly similar, if not identical, to
those raised and disposed of by this court and the Fifth Circuit in Venable.  In Venable, the issue was an
allegedly retaliatory counterclaim; in the present case, the issue is an allegedly
retaliatory lawsuit.  The court sees no
meaningful distinction between a retaliatory counterclaim and a retaliatory
lawsuit.  If there is any distinction,
it is infinitesimal and would have no impact on the court=s analysis of Plaintiff=s claims in this action.  Accordingly, the holding in Venable
and the authorities cited therein should foreclose the present action by Hinds.

 

Hinds
v. Dallas Independent School District, supra at 672. 

Nevertheless,
the federal district court proceeded with its analysis of Hinds= claims; the court considered Hinds= claim that the DISD brought the 1995 suit in
retaliation for his exercise of First Amendment free speech rights.  The district court held that AHinds=s First Amendment retaliation claim is foreclosed because he has failed
to allege a constitutional claim and establish each element of the underlying
state tort claimBmalicious prosecution.@ 
Hinds v. Dallas Independent School District, supra at 674; citing Colson
v. Grohman, 174 F.3d 498, 513 n.8 (5th Cir. 1999), and Johnson v. Louisiana
Department of Agriculture, supra at 320.

Finlan=s and David Venable=s retaliation claims are likewise
foreclosed.  Finlan and David Venable
cannot establish a malicious prosecution claim.  The elements of a 
malicious prosecution claim are: (1) the institution of or continuation
of civil proceedings against the plaintiff; (2) by or at the insistence of the
defendant; (3) malice in the commencement of the proceeding; (4) lack of
probable cause for the proceeding; (5) termination of the proceeding in
plaintiff=s favor; and (6) special damages.  Texas Beef Cattle Company v. Green, 921
S.W.2d 203, 207 (Tex.1996); citing James v. Brown, 637 S.W.2d 914, 918
(Tex.1982).  The mere filing of a civil
lawsuit is insufficient to establish the special injury requirement.  Texas Beef Cattle Company v. Green, supra at
208-09.  In order to satisfy the special
injury requirement, in addition to the filing of the suit, A[t]here must be some physical interference
with a party=s person or property in the form of an
arrest, attachment, injunction, or sequestration.@  Texas Beef Cattle Company v.
Green, supra at 209.  In this case,
there was no arrest, attachment, injunction, or sequestration; the Defendants
did not interfere with the person or property of either Finlan or David
Venable.  








Rather,
Finlan claims that he suffered damage to his reputation, pecuniary losses, adverse
tax losses, personal injuries, a loss of ability to obtain credit, and a loss
of property interests, including the rights to speak and vote.  David Venable claims that he suffered damage
to his reputation and economic losses that forced him to close his Dallas
office.  The types of Areputation@ damages and Abusiness
loss@ damages claimed by Finlan and David Venable
do not satisfy the Aspecial
injury@ requirement for malicious prosecution
claims.  Ross v. Arkwright Mutual
Insurance Company, 892 S.W.2d 119, 128 (Tex.App. - Houston [14th Dist.] 1994,
no writ); Martin v. Trevino, 578 S.W.2d 763, 766-70 (Tex.Civ.App. - Corpus
Christi 1978, writ ref=d
n.r.e.).  The Defendants conclusively
established that Finlan and David Venable did not suffer a special injury.  The trial court properly granted summary
judgment to the Defendants on Finlan=s and David Venable=s Section 1983 retaliation claims.

Further,
DISD=s filing of the suit did not violate Finlan=s right to petition.  A person=s Aaccess to the courts is protected by the
First Amendment right to petition for redress of grievances.@ 
Dallas Independent School District v. Finlan, supra at 244; citing
Ryland v. Shapiro, 708 F.2d 967, 971-72 (5th Cir. 1983), and Wilson v.
Thompson, 593 F.2d 1375, 1387 (5th Cir. 1979). 
The right of access to the courts is implicated Awhere the ability to file suit was delayed,
or blocked altogether.@  Dallas Independent School District v.
Finlan, supra at 244; citing Foster v. City of Lake Jackson, 28 F.3d 425, 430
(5th Cir. 1994).  In Dallas Independent
School District v. Finlan, supra, the Dallas Court of Appeals addressed Finlan=s right to petition claim:

Finlan has
not alleged, much less established, his ability to file suit was in any way
blocked altogether.  Rather, he has been
a frequent party to litigation against DISD Trustees.  See, e.g., Keever v. Finlan, 988 S.W.2d 300 (Tex.App. - Dallas
1999, pet. dism=d); Venable v. Keever, 960 F. Supp. 110 (N.D.
Tex. 1997).  The government=s filing of a civil lawsuit against an
individual in no way stands as an Aofficial impediment@ to that individual=s Afacilitative right to institute a suit.@ Hale v. Townley, 45 F.3d 914, 920 (5th Cir.
1995).  Thus, we hold that Finlan=s constitutional right to access to the
courts was not violated under our facts. 

 

Dallas Independent School
District v. Finlan, supra at 244.  In Hinds,
the federal district court held that because AHinds has failed to allege that his ability to file suit was delayed,
or blocked altogether, or allege facts which would establish such, he
has not alleged the violation of an actual constitutional right at all.@ 
(Emphasis in original) Hinds v. Dallas Independent School District,
supra at 673.  The DISD=s filing of the 1992 tortious interference
suit did not delay or block Finlan=s ability to file suit.  The
trial court properly granted summary judgment to the Defendants on Finlan=s right to petition claim.








Finlan=s eighth issue complains that the trial court
erred in granting summary judgment to the Lawyer Defendants on his Fourteenth
Amendment substantive due process claim. 
Finlan added this claim after the trial court granted summary judgment
to the DISD and the DISD Defendants. 
Finlan asserts that he added his Fourteenth Amendment claim after
discovering new evidence that Athe defendants= $270
million suit against Finlan was intentionally and maliciously sham litigation.@  The
Lawyer Defendants addressed this claim in their second supplemental motion for
summary judgment.  Finlan=s First Amendment and Fourteenth Amendment
claims are both based upon the DISD=s filing of the 1992 tortious interference suit against him.  

Finlan=s Fourteenth Amendment claim does not permit
him to avoid summary judgment on his Section 1983 claims.  The First Amendment applies to the states
through the Fourteenth Amendment; the First Amendment=s protected right to free speech is a
protected Aliberty@ right under the Fourteenth Amendment. 
See McIntyre v. Ohio Elections Commission, 514 U.S. 334, 337 n.1, 115
S.Ct. 1511, 131 L.Ed.2d 426 (1995). 
Finlan based his Fourteenth Amendment Asubstantive due process@ claim upon the alleged deprivation of his First Amendment rights.  Finlan=s First and Fourteenth Amendment claims are based upon the same
facts.  Finlan=s failure to establish a constitutional
deprivation of his First Amendment rights precludes a Fourteenth Amendment
substantive due process claim based upon the same facts.  See Colson v. Grohman, supra; Fowler v. Smith,
68 F.3d 124, 127 (5th Cir. 1995).  The
trial court properly granted summary judgment on Finlan=s Fourteenth Amendment claim.  

Finlan
also alleged that the Defendants conspired to violate his civil rights.  A conspiracy claim is not actionable under
Section 1983 if there is no actual constitutional or statutory violation.  Kerr v. Lyford, 171 F.3d 330, 340-41 (5th
Cir. 1999); Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995); Cinel v.
Connick, 15 F.3d 1338, 1343 (5th Cir. 1994). 
Because the Defendants established that no underlying constitutional
violation occurred, Finlan cannot recover on his conspiracy theory.  The trial court properly granted summary
judgment to the Defendants on Finlan=s conspiracy claim.

Because
the Defendants established that they were entitled to summary judgment on the
merits of each theory alleged by Finlan, we overrule Finlan=s first, second, third, fourth, seventh, and
eighth issues. 








David
Venable claims that the Defendants did not address his Aright of association@ claim in their motions for summary
judgment.  The Aright of association@ is another First Amendment right; it
encompasses a Aright of intimate association@ and a Aright of expressive association.@  See McCabe v. Sharrett, 12
F.3d 1558, 1562-63 (11th Cir. 1994).  The
Aright of intimate association@ has been described as Athe freedom to choose to enter into and
maintain certain intimate human relationships.@  McCabe v. Sharrett, supra at
1563; citing Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 104 S.Ct.
3244, 82 L.Ed.2d 462 (1984).  AAt a minimum, the right of intimate
association encompasses the personal relationships that attend the creation and
sustenance of a familyBmarriage,
childbirth, the raising and education of children, and cohabitation with one=s relatives.@  McCabe v. Sharrett, supra at
1563; citing Roberts v. United States Jaycees, supra.  This right Ais protected from undue governmental intrusion as a fundamental aspect
of personal liberty.@  McCabe v. Sharrett, supra at 1563; citing
Roberts v. United States Jaycees, supra.

The
Defendants filed no-evidence motions for summary judgment attacking David
Venable=s Section 1983 claims; the Defendants
asserted that there was no evidence that David Venable had suffered a
constitutional deprivation.  The
Defendants= motions were sufficient to attack a Aright of association@ claim. 
We need not determine whether the Aright to intimate association@ encompasses the relationship of adult brothers, such as the Venables,
because David Venable did not produce any evidence in support of his claim that
the Defendants violated his Aright of association.@  There is no evidence of Aundue governmental intrusion@ on his alleged Aright of association@ with his brother.  David Venable failed to meet his summary judgment burden.  We overrule David Venable=s second issue.

DISD
Defendants=
Qualified Immunity Defense








In Finlan=s third issue and David Venable=s fourth issue, they complain that the trial
court erred in granting summary judgment to the DISD Defendants on the basis of
qualified immunity.  The defense of
qualified immunity shields governmental officials from liability under Section
1983 for civil damages if Atheir conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known.@ 
Dallas Independent School District v. Finlan, supra at 242; citing
Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396
(1982).  

In Dallas
Independent School District v. Finlan, supra, the Dallas Court of Appeals
determined the precise issue involved in this case.  The Dallas Court of Appeals held that qualified immunity shielded
individual DISD trustees from liability for Finlan=s Section 1983 civil rights claims based upon
the DISD=s filing of the 1995 conspiracy suit.  Dallas Independent School District v.
Finlan, supra at 244.  In order for the
qualified immunity defense to apply, the public official must show that he was Aacting in his official capacity and within
the scope of his discretionary authority.@  Dallas Independent School
District v. Finlan, supra at 242; citing Barker v. Norman, 651 F.2d 1107, 1121
(5th Cir. 1981).  ADiscretionary authority exists when the law
does not specify the precise action that the official must take.@ 
Dallas Independent School District v. Finlan, supra at 242; citing Davis
v. Scherer, 468 U.S. 183, 196 n.14: 104 S.Ct. 3012, 82 L.Ed. 2d 139
(1984).  AAn act is discretionary under Texas law if it requires personal
deliberation, decision, and judgment.@  Dallas Independent School
District v. Finlan, supra at 242; citing Jolly v. Klein, 923 F. Supp. 931, 948
(S.D. Tex. 1996).  

The
question whether to file suit requires deliberation, decision, and judgment.  The Dallas Court of Appeals determined that
the DISD officials=
decision to allow the filing of the 1995 conspiracy suit against Finlan was Aa wholly discretionary act taken within their
official authority.@  Dallas Independent School District v.
Finlan, supra at 242.  Likewise, the
DISD Defendants= decision to allow the filing of the 1992
tortious interference suit against Finlan and the Venables was a discretionary
act taken within their official authority. 









In Dallas
Independent School District v. Finlan, supra, the Dallas Court of Appeals
explained the sequential two-step inquiry that courts must use to decide
motions for summary judgment that raise the qualified immunity defense.  Dallas Independent School District v.
Finlan, supra at 243; citing Siegert v. Gilley, 500 U.S. 226, 231-32, 111 S.Ct.
1789, 114 L.Ed.2d 277 (1991).  First,
the courts decide the Apurely
legal question@ of whether the defendant=s conduct violated clearly established law at
the time the conduct occurred.  Dallas
Independent School District v. Finlan, supra at 243; citing Siegert v. Gilley,
supra.  This question is always a matter
of law for the court and may always be decided at the summary judgment
stage.  Dallas Independent School District
v. Finlan, supra at 243; citing Pritchett v. Alford, 973 F.2d 307, 313 (4th
Cir. 1992).  If the conduct complained
of did not violate clearly established law, Asummary judgment is proper without an inquiry into reasonableness
because an official could not reasonably be expected to know that the law
forbade his conduct.@  Dallas Independent School District v.
Finlan, supra at 243; citing Harlow v. Fitzgerald, supra.  If the conduct complained of did violate
clearly established law, the court must then determine whether the defendant=s conduct was objectively reasonable.  Dallas Independent School District v.
Finlan, supra at 243; citing Pritchett v. Alford, supra.  This inquiry Amay or may not be...subject to determination as a matter of law.@ 
Dallas Independent School District v. Finlan, supra at 243. 

The Dallas
Court of Appeals then explained the first inquiry in the qualified immunity
analysis:

Turning to
the threshold inquiry regarding the qualified immunity defense, the legal right
at issue in this case is Finlan=s right not to be subjected to a civil suit for allegedly exercising
his free speech rights and for invoking his right to access the courts.  Thus, the legal question is whether the law
was clearly established in 1995 that the filing of a civil suit, alleged to be
malicious and retaliatory, would violate an individual=s First Amendment rights to free speech and
access to the courts.

 

Dallas Independent School
District v. Finlan, supra at 243-44.








The Dallas
Court of Appeals considered Finlan=s free speech claim.  The court
relied upon the Fifth Circuit=s holding in Johnson that Athere is no clearly established right to claim a First Amendment
violation from the filing of a civil lawsuit, even one alleged to be malicious
prosecution, in retaliation for the exercise of free speech rights.@ 
Dallas Independent School District v. Finlan, supra at 244.  Therefore, the Dallas Court of Appeals held
that Ain 1995 there was no clearly established law
that the filing of a civil suit in retaliation violated an individual=s free speech rights.@ 
Dallas Independent School District v. Finlan, supra at 244.  The Dallas Court of Appeals then considered
Finlan=s right to petition claim and noted the Fifth
Circuit=s recognition that Ait is well established that access to the
courts is protected by the First Amendment right to petition for redress of grievances.@ 
Dallas Independent School District v. Finlan, supra at 244; citing
Ryland v. Shapiro, supra at 971-72, and Wilson v. Thompson, supra at 1387.  However, because Finlan failed to allege or
establish that his ability to file suit was in any way delayed or blocked
altogether, the Dallas Court of Appeals held Athat Finlan=s
constitutional right to access to the courts was not violated under our facts.@ 
Dallas Independent School District v. Finlan, supra at 244.  Consequently, the Dallas Court of Appeals
held that the trial court properly granted summary judgment to the DISD
Trustees on their qualified immunity defense. 
Dallas Independent School District v. Finlan, supra at 244.                          The first inquiry in the qualified immunity analysis in this
case is essentially the same as the first inquiry in Dallas Independent School
District v. Finlan, supra. In this case, the inquiry is whether the law was
clearly established in 1992 that the filing of a civil suit, alleged to be
malicious and retaliatory, would violate an individual=s First Amendment rights to free speech and
access to the courts.  In 1992, just as
in 1995, there was no clearly established law that the filing of a retaliatory
and malicious civil suit violated an individual=s free speech rights.  See
Dallas Independent School District v. Finlan, supra at 244.  As discussed above, the DISD=s filing of the 1992 tortious interference
suit did not violate Finlan=s constitutional right to access the courts.  The trial court properly granted summary judgment to the DISD
Defendants on Finlan=s and
David Venable=s civil rights claims based upon their
qualified immunity defense.  We overrule
Finlan=s third issue and David Venable=s fourth issue.

                                         The ALaw of the Case@ Doctrine Does Not Apply

In his
first issue, David Venable asserts that the trial court erred in refusing to
follow the Alaw of the case@ on the qualified immunity issue. 
We disagree.  Before Finlan=s and David Venable=s claims against the DISD Defendants and the
Lawyer Defendants were consolidated into this cause, the DISD Defendants moved
for summary judgment on their qualified immunity defense in the 162nd District
Court.  The trial court denied the
motion; and, as allowed by TEX. CIV. PRAC. & REM. CODE ANN. ' 51.014(5) (Vernon Supp. 2002), the DISD
Defendants filed an interlocutory appeal of the denial of the motion.  In an unpublished opinion, the Dallas Court
of Appeals affirmed the trial court (see Kress v. Venable, No. 05-96-00663-CV,
1997 WL 211556 (Tex.App. - Dallas, April 30, 1997, writ dism=d w.o.j.)(not designated for
publication)).  David Venable claims
that the trial court erred in granting summary judgment to the DISD Defendants
on the immunity issue because the summary judgment was contrary to the Alaw of the case.@








The Alaw of the case@ doctrine provides that questions of law decided on appeal to a court
of last resort govern that case throughout its subsequent stages.  Hudson v. Wakefield, 711 S.W.2d 628, 630
(Tex.1986).  The Alaw of the case@ doctrine only applies to questions of law; it does not apply to
questions of fact.  Hudson v. Wakefield,
supra at 630.  In Kress v. Venable,
supra, the Dallas Court of Appeals did not decide a question of law.  It did not address the first inquiry in the
qualified immunity analysis; that is, it did not address the question of law
whether the law was clearly established in 1992 that the filing of a civil
suit, alleged to be malicious and retaliatory, would violate an individual=s First Amendment rights to free speech and
access to the courts.  Rather, the
Dallas Court of Appeals held that the DISD Defendants= summary judgment evidence failed to
conclusively establish that they were entitled to summary judgment on the
immunity issue.  See Kress v. Venable,
supra.  The summary judgment affidavits
offered by the DISD Defendants in Kress v. Venable, supra, did not negate the
existence of fact issues; the affidavits were factually insufficient to support
a summary judgment.  The Dallas Court of
Appeals based its holding on the insufficient summary judgment evidence, not on
a decision on a question of law.  The Alaw of the case@ doctrine does not apply.  We
overrule David Venable=s
first issue.

                                           Finlan=s Motion for Partial Summary Judgment

In his
fifth issue, Finlan complains that the trial court erred by failing to grant
his May 20, 1999, motion for partial summary judgment against the DISD and the
DISD Defendants on his Section 1983 claims. 
Because the trial court properly granted summary judgment to the DISD
and the DISD Defendants on Finlan=s claims, it was proper for the trial court to deny Finlan=s motion for partial summary judgment on the
same claims.  We overrule Finlan=s fifth issue. 

                            David
Venable=s State Law Claims

In his
First Amended Original Petition, David Venable also alleged claims of (1)
malicious prosecution, (2) intentional infliction of emotional distress, and
(3) tortious interference with business and contractual relations.  The elements of a malicious prosecution
claim are set forth above.  The
Defendants established as a matter of law that David Venable did not sustain a Aspecial injury.@  Therefore, the trial court
properly granted summary judgment on the malicious prosecution claim. 








In order
to establish an intentional infliction of emotional distress claim, a plaintiff
must establish four elements: (1) the defendant acted intentionally or
recklessly; (2) the conduct was Aextreme and outrageous@; (3) the actions of the defendant caused the plaintiff emotional
distress; and (4) the emotional distress suffered by the plaintiff was
severe.  Twyman v. Twyman, 855 S.W.2d
619, 621-22 (Tex.1993).  AExtreme and outrageous conduct@ means conduct Aso outrageous in character, and so extreme in degree, as to go beyond
all possible bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community.@  Twyman v. Twyman, supra at
621.  The Defendants met their summary
judgment burden of establishing that their conduct was not extreme and
outrageous.  Summary judgment was proper
on David Venable=s intentional infliction of emotional
distress claim.

In order
to establish a tortious interference with contract claim, a plaintiff must
establish: (1) the existence of a contract subject to interference; (2) a
willful and intentional act of interference; (3) the act was a proximate cause
of the plaintiff=s damages; and (4) actual damage or
loss.  Texas Beef Cattle Company v.
Green, supra at 210.  Texas law also
recognizes a cause of action for tortious interference with prospective
relationships.  The elements of this
claim are: (1) a Areasonable
probability@ that the plaintiff would have entered into a
contractual relationship; (2) an independently tortious or unlawful act by the
defendant that prevented the relationship from occurring; (3) the defendant did
such act with a conscious desire to prevent the relationship from occurring or
the defendant knew the interference was certain or substantially certain to
occur as a result of the conduct; and (4) the plaintiff suffered actual harm or
damages as a result of the defendant=s conduct.  See Ash v. Hack
Branch Distributing Company, Inc., 54 S.W.3d 401, 414-15 (Tex.App. - Waco 2001,
pet=n den=d).








The
Defendants filed no-evidence motions for summary judgment on David Venable=s tortious interference claims.  David Venable failed to produce summary
judgment evidence that the Defendants interfered with or damaged any specific
contract, prospective contract, or relationship. Without evidence of any such
contracts or relationships, the trial court properly granted summary judgment
on David Venable=s tortious interference claims.  See Stephan v. Baylor Medical Center at
Garland, 20 S.W.3d 880, 891 (Tex.App. - Dallas 2000, no pet=n). 
Because the Defendants established that they were entitled to summary
judgment on each theory alleged by David Venable, we overrule David Venable=s third issue.

                                          Continuance
of Summary Judgment Proceedings

In his
fifth issue, David Venable complains that the trial court erred by failing to
continue the summary judgment hearings to allow him additional time for
discovery.  We review the trial court=s denial of a motion for continuance of a
summary judgment hearing under an abuse of discretion standard.  Tenneco, Inc. v. Enterprise Products
Company, 925 S.W.2d 640, 647 (Tex.1996); Villegas v. Carter, 711 S.W.2d 624
(Tex.1986).  A trial court abuses its discretion
in this context only if the record clearly demonstrates that the denial was
arbitrary and unreasonable.  Gregg v.
Cecil, 844 S.W.2d 851, 853 (Tex.App. - Beaumont 1992, no writ).  It is generally not an abuse of discretion
by the trial court to deny a motion for continuance of a summary judgment
hearing if the party has received the 21-day notice of the hearing required by
TEX.R.CIV.P. 166a(c).  Dallas
Independent School District v. Finlan, supra at 235-36.  David Venable received more than the 21-day
notice required by the rule.  David
Venable contends that he needed to obtain additional documents from the DISD
and to take the depositions of the Lawyer Defendants, but he failed to identify
how the additional discovery would have permitted him to adequately respond to
the Defendants= motions for summary judgment.  Moreover, David Venable had years to request
discovery.  The record does not show
that David Venable used diligence in seeking the discovery.  If he did, in fact, seek the discovery and
the Defendants failed to respond as they were required to do under the Texas
Rules of Civil Procedure, David Venable had the opportunity to seek relief from
the trial court.  The record does not
demonstrate that he made any such attempts. 
The record does not establish that the trial court abused its discretion
in denying a continuance of the summary judgment hearings.  We overrule David Venable=s fifth issue.

                                                              Finlan=s Other Issues








In his
sixth issue, Finlan asserts that the trial court erred Aby granting DISD judgment on Finlan=s declaratory judgment claim, abuse of process
claim, malicious prosecution claim, and Texas Open Records claim because such
causes of action were not before the court.@  Finlan asserted these claims
in his original petition but dropped these claims before the DISD filed its
motion for summary judgment.  The DISD
did not move for summary judgment on these claims; the trial court did not
grant summary judgment on these claims. 
We overrule Finlan=s sixth issue.

In his
ninth issue, Finlan asserts that the Lawyer Defendants= motion for summary judgment and supplemental
motions for summary judgment did not address his live pleadings.  Finlan is incorrect in this assertion.  The record shows that the Lawyer Defendants
did address his live pleading in their second supplemental motion for summary
judgment.  We overrule Finlan=s ninth issue.         

                                           Grant=s Claims Against the Lawyer Defendants

In his
first issue, Grant complains that the trial court erred by failing to sever and
abate his legal malpractice claim for indemnity against the Lawyer Defendants
pending the outcome of the principal cause of action.  However, Grant did not request the trial court to sever or abate
his claim.  Grant cannot raise this
issue for the first time on appeal.  See
TEX.R.APP.P. 33.1(a).  Moreover,
severance and abatement of claims are matters within the sound discretion of
the trial court, and the appellate courts review a trial court=s rulings on the issues under an abuse of
discretion standard.  Liberty National
Fire Insurance Company v. Akin, 927 S.W.2d 627, 629 (Tex.1996).  In Guaranty Federal Savings Bank v.
Horseshoe Operating Company, 793 S.W.2d 652, 658 (Tex.1990), the supreme court
stated that a trial court properly severs claims when: (1) the controversy
involves more than one cause of action; (2) the severed claim is one that would
be the proper subject of a lawsuit if independently asserted; and (3) the
severed claim is not so interwoven with the remaining action that they involve
the same facts and issues.  Thus, if the
claims are so interwoven that they involve the same facts and issues, such as
in the case now before this court, severance is not proper. Grant=s indemnity claim against the Lawyer
Defendants is predicated upon the DISD=s filing of the 1992 tortious interference suit against Finlan and the
Venables.  Grant=s claim and Finlan=s and the Venables= claims involve many of the same facts and
issues.  Grant=s claims are Ainterwoven@ with
Finlan=s and the Venables= claims. 
Under these circumstances, even if Grant had moved the trial court to
sever and abate his claims, the trial court would not have abused its
discretion if it denied the motion.  We
overrule Grant=s first issue.              








In his
second issue, Grant claims that the summary judgment evidence raised fact
issues precluding summary judgment on his indemnity claim against the Lawyer
Defendants.  The trial court=s summary judgment in favor of the Lawyer
Defendants on Finlan=s and David
Venable=s claims was proper.  Because Finlan and David Venable have no
cause of action against the Lawyer Defendants, Grant cannot recover indemnity
from the Lawyer Defendants.  Indemnity
cannot be recovered from a party when the injured party has no cause of action
against the party from whom indemnity is sought.  Hunter v. Fort Worth Capital Corporation, 620 S.W.2d 547, 553
(Tex.1981); Medical Protective Company v. Groce Locke & Hebdon, 814 S.W.2d
124, 130 (Tex.App. - Corpus Christi 1991, writ den=d). 
The trial court properly granted summary judgment to the Lawyer
Defendants on Grant=s
indemnity claim.  We overrule Grant=s second issue.

In his
third issue, Grant claims that the trial court erred in denying his motion to
continue the summary judgment proceedings. 
Grant raises the same arguments that David Venable argued in his fifth
issue.  We overruled David Venable=s fifth issue above.  We overrule Grant=s third issue for the same reasons. 

                                                      Grant=s Issues as Cross-Plaintiff

In his
mandamus action, Grant sought an order from the trial court requiring the DISD
to provide him with a defense of Finlan=s and the Venables= claims.  In his first issue,
Grant asserts that the trial court erred by rendering a final judgment in this
action because the trial court did not rule on his mandamus action.  Alternatively, Grant asserts that the trial
court abused its discretion if it granted judgment to the DISD on his mandamus
action.  Grant sought the mandamus
relief in his capacity as a defendant of Finlan=s and the Venables= claims.  The trial court
severed Finlan=s and the Venables= claims against Grant from this action.  Grant=s mandamus action seeking a defense of these very claims went with the
severed action.  Grant can pursue his
claim in the severed action.  We
overrule Grant=s three issues as cross-plaintiff.

                                                     Lawyer
Defendants=
Cross-Point








Because we
have held that the summary judgment in favor of the Lawyer Defendants on the
merits of Finlan=s and David Venable=s claims was proper, we need not address the
Lawyer Defendants=
cross-point that the trial court erred by denying them summary judgment on
their qualified immunity defense and other immunity defenses.         

                                                                This
Court=s Ruling

We affirm
the judgment of the trial court. 

          

            TERRY McCALL

JUSTICE

 

October 24, 2002

Publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and

McCall, J., and McCloud, S.J.[3]











     [1]The DISD Defendants are DISD Superintendent Marvin
Edwards and DISD Trustees Sandy Kress, Rene Castilla, Trini Garza, Hollis
Brashear, Kathlyn Gilliam, and Yvonne Ewell. 
DISD Trustees Dan Peavy and Ed Grant were also defendants; but, because
of conflicts of interest between the DISD, on the one hand, and Peavy and
Grant, on the other hand, the DISD did not provide a defense to Peavy or Grant
in this cause.  Peavy and Grant are not
included in the DISD Defendants in this opinion.  The trial court severed Finlan=s
and the Venables= claims against Peavy and Grant before entering its
final judgment in this matter.   





     [2]The Lawyer Defendants are Leonard J. Schwartz; Dennis
J. Eichelbaum; and their firm, Schwartz & Eichelbaum, P.C.  





     [3]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.